IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER HOEKSTRA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. 13 CV 2814 |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, HEATHER HOEKSTRA, through counsel, the Moran Law Group, complains of Defendant FORD MOTOR COMPANY as follows:

### NATURE OF THE CASE

1.     This hostile work environment, employment discrimination and civil rights action is brought by Heather Hoekstra (hereinafter "Plaintiff" or "Hoekstra") and seeks redress for sexual harassment, gender discrimination and retaliation causing a hostile work environment, suffered in her capacity as an employee of the Ford Motor Company (hereinafter "Ford"). Ford, who at all times has been aware of Hoekstra's complaints, has done nothing to alleviate or rectify the situation at Hoekstra's workplace.

2.     Plaintiff was discriminated against based upon her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.*, as amended. The severe and pervasive harassment had created a hostile work environment at Plaintiff's place of employment.

3.     Plaintiff filed a claim of discrimination with the Equal Opportunity Commission ("EEOC"), charge number 440-2011-05754, which was cross-filed with the Illinois Department

of Human Rights ("IDHR").

4.      Thereafter, Plaintiff has been the target of ongoing retaliation and harassment by Defendants since, and because of the filing of her claim with the Equal Opportunity Employment Commission in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3.

5.      Plaintiff has also been retaliated against in violation of the Illinois Whistleblower Act, 740 ILCS § 174/15(b) for making protected disclosures to a government agency where Plaintiff reasonably believed that her employer had engaged in violations of a federal law, rule, or regulation.

**JURISDICTION**

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(1-4), conferring original jurisdiction on this court of any civil action to recover damages or to secure equitable relief under the Constitution, treaties, or any Act of Congress, including those providing for the protection of civil rights and relief from discrimination and retaliation in employment, *e.g.*, 42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-3(a), *et. al*.  The Court has supplemental jurisdiction over the state law claim pleaded in this complaint pursuant to 28 U.S.C. § 1367.

7.      Plaintiff has complied with all statutory prerequisites of her Title VII claims, having filed a charge of discrimination the basis of race and retaliation with the EEOC on February September 23, 2011, within 300 days of a discriminatory act.  Plaintiff has further written to the EEOC to complain of retaliation as well.  (A true and accurate copy of Plaintiff's EEOC filing is attached hereto as **EXHIBIT A**).  On January 15, 2013, the EEOC issued its *Notice of Right to Sue* letter.  Hoekstra received this notice on January 17, 2013.  (A true and accurate copy of the EEOC letter of right to sue is attached hereto as **EXHIBIT B**).

**VENUE**

8.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391, as all events described herein took place in the Northern Judicial District and both parties reside, or are located within the Northern Judicial District of Illinois.

**PARTIES**

9.      Plaintiff Heather Hoekstra is a citizen and resident of the state of Indiana and a citizen of the United States.  Hoekstra has worked for the Ford Motor Company since August of 1996.  During all relevant times, Hoekstra was an "employee" within the meaning of 42 U.S.C. §2000e (f).

10.      Defendant Ford Motor Company is a corporation headquartered in Dearborn, Michigan, with locations throughout the United States, including the Northern Judicial District of Illinois.  Ford is an "employer" within the meaning of 42 U.S.C. §2000e (b).

**FACTS COMMON TO ALL COUNTS**

11.      Plaintiff Heather Hoekstra was hired by the Ford Motor Company in August, 1996.

12.      During the relevant times, Hoekstra was employed at the "Chicago Stamping Plant," and has held various positions within the facility.  For the last seven years, Hoekstra has been an Inspector in the Quality Division.  The Chicago Stamping Plant is a male dominated place of employment.

13.      Between 2001 and 2003, Hoekstra began to experience sexual harassment at the hands of her then supervisor, Carl Horton, including comments of a sexual nature and being groped.  Hoekstra reported this to Ford's Labor Relations division, but no action was taken.

14.     After reporting Carl Horton to Labor Relations, Hoekstra believes that she was retaliated against by Horton by being scrutinized in her work, being passed over for a promotion and arbitrarily disciplined.  Hoekstra believed that her complaint about Horton led him to attempt to have her terminated.

15.     Labor Relations claimed to have investigated Hoekstra's complaint concerning Horton, however the determined there was no merit to her claim and took no further action.

16.     Hoekstra was frustrated and discouraged by Ford's apparent lack of concern or any change in the harassment or hostile atmosphere, but fearing further retaliation, did not report any further harassment to Labor Relations until several years later.

17.     Over the course of her employment, including within the last two years, Hoekstra has endured comments of a sexually suggestive nature from co-workers and supervisors, including but not limited to: "look at that ass," "shake that ass," "I want to get in that box - both of them," "you have a nice chest," "you have nice boobs," "big tits," "do you wear lingerie?" "you have porn hair," and "you have porn-puff hair," "You just need to bat your eyes to get things done," repeated comments about being a "dumb blond," "stupid," and not being as intelligent as the male workers.

18.     Over the course of her employment, including within the last two years, Hoekstra has also endured male employees hooting and hollering at her as she has walked by, having African-American men comment "why don't you like black guys? (in reference to dating)," being told by several men that they were watching her, continuos use of terms such as "hun," "baby," and "sweetheart," which were used derisively and often carried connotations of sexual harassment or of Hoekstra being less capable in the workplace.

19.     Over the course of her employment, including within the last two years male employees have referred to Hoekstra as "sexy" or "beautiful" in a harassing manner, often time accompanying the comments with attempts to touch Hoekstra in ways that made her uncomfortable.  Hoekstra overheard one male employee ask his supervisor (in a manner meant to be heard by Hoekstra) if he thought that Hoekstra "wears lingerie for her husband."

20.     The harassment at Hoekstra has also been physical in nature, with one male employee standing in a group grabbing Hoekstra's pony tail as she walked by.  Hoesktra also allowed another male colleague to hug her, and when he did, kissed her on the cheek.  Hoekstra informed him that he had crossed the line.

21.     Hoekstra has also had her personal vehicle defaced, with an individual placing a sticker on the back window of her truck while it was parked in the Ford employee parking lot that said "Toss my salad," a reference to a sexual act.

22.     Hoekstra also worked with a man named Al Wills.  Wills would regularly harass Hoekstra by entering her personal space, getting very close to her, and making boxing, or fighting gestures towards her.  At one point Wills wore a shirt into work that said "Some people are alive only because we're not allowed to kill them," showing it to Hoekstra and making her uncomfortable.

23.     On August 10, 2011, Wills harassed and groped Hoekstra.  Wills first tried grabbing Hoekstra's hands.  When she pulled away and told him "no," he followed her to another job site, put his arm around her, and groped her breast.  Prior to that incident, Wills had been repeatedly putting his hands on Hoekstra's shoulders and making suggestive comments, claiming to be "watching" Hoekstra.

24.     On August 12, 2011, Hoekstra reported this behavior to Labor Relations, giving names of individuals she believed had witnessed the harassment, including another individual who had previously made sexually suggestive comments towards Hoekstra.  While reporting this behavior to Labor Relations, Hoekstra was asked whether she had a "vendetta against the company?".

25.     Based on the ongoing harassment, Hoekstra suffered an anxiety attack and was placed on a two-week medical leave.

26.     Upon her return on August 29, 2011, Labor Relations informed Hoekstra that Wills had denied groping her and that they could find no witnesses and the matter was closed.

27.     Also on August 29, 2011, Hoekstra was required to attend a "start of shift meeting."  Wills entered the meeting and squeezed in behind Hoekstra, and continued to stand unusually close to Hoekstra for the remainder of the meeting.

28.     The repeat occurrences of sexual harassment did not stop.

29.     On September 2, 2011, Inspector Eugene White groped Hoekstra while she was walking into work.  White moved toward Hoekstra appearing to want to give her a hug, Hoekstra told him "no," but White made contact and gave her a hug anyway, pressing his body hard against Hoekstra's breasts.  Hoekstra had previously witnessed White hugging another female employee and putting his face into the co-worker's breast area.

30.     Upon returning from her lunch break on September 2, 2011, Hoekstra found that her fan's power cord had been removed.  As it was very hot in the plant at that time (high of 94° in the Chicago area) Hoekstra believed that the cord had been removed in retaliation for her reports of sexual harassment.

31.     Hoekstra reported the harassment of September 2, 2011 to her supervisor Aileen Robles and to Labor Relations.

32.     The harassment by coworkers continued and Hoekstra took a medical leave of absence in early 2012 due to anxiety and stress as a result.  Upon returning the work on February 20, 2012, Hoekstra immediately began receiving the same kind of treatment with comments and unwanted contact.

33.     Hoekstra again suffered sexual harassment on March 14, 2012, when her immediate supervisor, Ray Vega, came over to where Hoekstra was working on a computer, intentionally bumped into her and then brushed himself up against her in a sexual manner.  Vega was the same individual who had pulled Hoekstra's ponytail a few years earlier.

34.     Hoekstra reported Vega's behavior to Labor Relations and took a brief leave of absense due to an anxiety attack over the continued harassment.  After returning to work, Hoekstra asked to be removed from Vega's supervision and placed in another area of the plant.  Labor Relations told Hoekstra that they were investigating the incident, but has not taken any further steps that Hoekstra is aware of.

35.     On March 22, 2012, Hoekstra documented and reported to Labor Relations about sexually harassing comments from a male employee, who she had never seen or met before.  While working in one of the press rooms, she inquired of a male employee how long it would take to set the die.  The male employee responded by asking how he could get the "attention of a good looking woman?," and then bent over and told Hoekstra that she had no "ass."

36.     On or about March 29, 2012, a male employee named "Tyrone" made a violent

"punching" motion toward Hoekstra's face as she walked past him. Hoekstra reported this behavior to the EEOC.

37.     Hoekstra took an extended leave of absence in mid 2012 due to anxiety and mental distress over the hostile work environment. Despite being off work, she was continuously harassed by her immediate supervisor Ray Vega via phone calls and text messages.

38.     Hoekstra was again forced to take a medical leave of absence due to anxiety and mental distress over her treatment at work in October, 2012. Upon her return on November 5, 2012, Hoekstra found that her personal locker had been emptied out and all of her items had been turned over to security. When retrieving the items, a male employee walked by and told the security officer that "you can arrest her (Hoekstra) now."

39.     On December 10, 2012, a male employee named Jerry Summit intentionally bumped the lower part of his body into Hoekstra in the cafeteria and called her "trouble."

40.     On March 15, 2013, with the harassment not abating, Hoekstra made yet another report to Labor Relations regarding recent harassing activities, including the fact that she had been punched hard in the leg by another inspector named Don Cooper.

41.     Finally, on March 10, 2013, Hoekstra approached her coworker Jesse Landingham, to ask him a question about the job. Landingham responded by touching Hoekstra on the arm and then patting her posterior in an unwanted manner. Hoekstra reported this event to Labor Relations and they informed Hoekstra that they are investigating the matter.

42.     Due to the continuous harassment, Hoekstra has made it explicitly clear to her coworkers that she does not want to be touched by them. In spite of these warnings, the behvior has only increased.

43.     Hoekstra's supervisor, Ray Vega, has not treated similarly-situated males, or employees who did not object to unlawful-discrimination, in the same manner as Hoekstra.

44.     As a result of her complaints, Hoekstra has been under extra scrutiny by her supervisors. She has been given tasks with unreasonably short periods of time, different from other employees, in which to complete her assignments with the goal of creating a reason to terminate her employment.

45.     Hoekstra has also noticed an increase in her co-workers either failing to do certain parts of their jobs or creating issues making her jobs harder to complete as a quality inspector, with the effect being to make Hoekstra seem incompetent in her position.

46.     As a result of the sexual harassment, Hoekstra has been forced to take numerous medical leaves for anxiety and mental and emotional distress. Despite having doctor's notes for these absences, Hoekstra has been disciplined for missing work.

47.     Due to her reports of this ongoing and pervasive behavior by her supervisors and co-workers, Hoekstra has intentionally been passed over for promotions for which she was qualified and those positions have been filled by male co-workers.

48.     Ford has failed to provide any sexual harassment training to any of the employees (besides new individuals at the time of hiring) in the

49.     As a direct and proximate result of the previously stated facts, Hoekstra has in the past and will in the future suffer damages, including but not limited to, lost wages and benefits, severe mental and emotional harm, anguish, distress, embarrassment, humiliation, damage to reputation, lost future earnings, medical and therapeutic costs, and other compensatory damages.

50.     Ford's acts of discrimination and retaliation against Hoekstra were intentional,

willful and wanton, and done with reckless disregard of Hoekstra's federally protected rights and the harms to her.

## COUNT I
### HOSTILE WORK ENVIRONMENT/TITLE VII SEX DISCRIMINATION

51.     Plaintiff restates and incorporates Paragraphs 1-50 as if set forth here.

52.     Ford discriminated against Hoekstra based on her sex, female, by subjecting her to different terms and conditions of employment and to a hostile work environment, and by failing to promote her, in violation of Title VII, whereby she has suffered and will continue to suffer both irreparable injury and compensable damages.

## COUNT II
### TITLE VII RETALIATION

53.     Plaintiff restates and incorporates Paragraphs 1-50 as if set forth here.

54.     Ford has retaliated against Hoekstra for her complaints concerning and opposition to the discrimination against her, for her reports to the EEOC and other agencies, by subjecting her to different terms and conditions of employment and a hostile work environment, and failing to promote her in violation of Title VII, whereby she has suffered and will continue to suffer both irreparable injury and compensable damages.

WHEREFORE, Plaintiff Heather Hoekstra respectfully requests that this Honorable Court enter judgment against Defendant Ford Motor Company and that the Court grant the following relief to her:

A)     Grant Plaintiff Hoekstra a permanent injunction enjoining Defendant Ford from continuing to violate Plaintiff Hoekstra's civil rights;

B)     Award Plaintiff Hoekstra damages, including but not limited to, back pay and

benefits, front pay, emotional distress, pain and suffering, damage to reputation,

lost future earnings, other compensatory damages, prejudgment interest, post

judgment interest and any other appropriate relief necessary to make Plaintiff

Hoekstra whole and compensate her for the civil rights violations described

above;

C)      Award Plaintiff Hoekstra the costs of this action along with her reasonable

attorney's fees;

D)      Grant any and all other relief as this Court deems necessary.

**JURY DEMANDED**

Respectfully submitted,

By:_____
       One of Plaintiff's Attorneys

MATTHEW T. LAYMAN
THE MORAN LAW GROUP
309 WEST WASHINGTON STREET
SUITE 900
CHICAGO, ILLINOIS 60606
(312)630-0200