IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER HOEKSTRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 2814 |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Ford Motor Company's (Ford) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in part, and the remaining state law claim is dismissed without prejudice.

## BACKGROUND

Plaintiff Heather Hoekstra (Hoekstra) allegedly began working for Ford in 1996 at Ford's Chicago Stamping Plant (Plant) on the production line. In 2004, Hoekstra was promoted to an inspector position, which she currently holds. Hoekstra claims that starting in the late 1990s she was sexually harassed at work, and that after complaining to management about the alleged harassment, she suffered

1

retaliation. According to Hoekstra, there was not one continuous perpetrator or group of perpetrators that engaged in such misconduct during her years of employment. Instead, according to Hoekstra, the accused persons harassed her or retaliated against her only for a limited period of time or in some cases in only one isolated instance. Those accused of harassment and retaliation include a variety of persons with no apparent connections, including co-workers, supervisors, security guards, and other unknown individuals at the Plant. Over the course of a decade and a half Hoekstra claims to have suffered discrimination, harassment, and retaliation, by more than 15 co-workers, six supervisors, and various other unknown, unidentified, and random male employees. During that time, Hoekstra allegedly made numerous complaints to management about her perceived treatment and took various medical leaves for her alleged anxiety. Hoekstra also attributes certain isolated events during the course of the years of her employment, such as finding a power cord missing one day, and a scooter swerving near her, to an alleged hidden conspiracy against her.

In 2013, Hoekstra brought the instant action and includes in her amended complaint a claim alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) (Count I), a Title VII hostile work environment claim (Count I), a Title VII retaliation claim (Count II), and an Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* claim (Count III). Ford moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Sex Discrimination Claim

Ford moves for summary judgment on the Title VII disparate treatment sex discrimination claim. (SJ. Mem. 5 n.2). Hoekstra includes allegations in her complaint indicating that she is bringing a sex discrimination disparate treatment claim along with her hostile work environment claim. Hoekstra alleges in Count I

that Ford "discriminated against [Hoekstra] based upon her gender. . . ." (A. Compl. Par. 2). Hoekstra further alleges that "Ford discriminated against Hoekstra based on her sex, female, by subjecting her to different terms and conditions of employment *and* to a hostile work environment. . . ." (A. Compl. 53)(emphasis added). In response to Ford's motion for summary judgment, however, Hoekstra offers no arguments as to establishing the requirements under the direct method of proof or the requirements under the indirect method of proof. *See Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 604 (7th Cir. 2014)(explaining direct and indirect methods of proof). Instead, Hoekstra has focused on her hostile work environment claim in Count I despite the fact that Ford has moved for summary judgment on all claims. (Mem. SJ 5 n.2, 22). To the extent that Hoekstra has assumed that the hostile work environment claim is one and the same under the law as the sex discrimination disparate treatment claim, or that she can bring a hybrid of the two, she is mistaken. There are entirely distinct criteria for the two types of claims. *See Orton-Bell v. Indiana*, 759 F.3d 768, 773-78 (7th Cir. 2014)(separately addressing hostile work environment claim and sex discrimination claim). Hoekstra has not clarified whether her failure to argue in support of her sex discrimination disparate treatment claim expresses her intent to abandon such claim and voluntarily dismiss such claim. Therefore, to the extent that Hoekstra is still seeking to pursue a Title VII sex discrimination disparate treatment claim against Ford, Ford's motion for summary judgment on that claim is granted.

4

II. Hostile Work Environment Claim

Ford moves for summary judgment on the hostile work environment claim. For a Title VII hostile work environment claim, a plaintiff must show: (1) that "her work environment was both objectively and subjectively offensive," (2) that "the harassment was based on her" protected characteristic, (3) that "the conduct was either severe or pervasive," and (4) that "there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011). Hoekstra alleges a broad variety of facts detailing alleged harassment and retaliation that range from physical contact such as unwanted hugs, oral statements of a sexual nature, and the use of sarcasm, which Hoekstra also considered a form of sexual harassment. (H. Dep. 191). Ford questions the veracity of Hoekstra's many allegations, contending that Hoekstra consistently lacked any corroboration for her accusations and that there were investigations by Ford that indicated that Hoekstra's versions of the facts were not accurate. (Reply 12-13). Ford also indicates that to the extent that there was evidence indicating any potential harassment or retaliation, such employees were disciplined. The court need not resolve whether Hoekstra is telling the truth about her many years of alleged mistreatment. Ford argues that even if for the purposes of the instant motion, the court accepted Hoekstra's allegations as true, she cannot succeed on her hostile work environment claim since there is not sufficient evidence to show that Ford can be held liable for any harassment.

A. Co-Workers

Ford argues that there is not sufficient evidence to establish employer liability for any of the alleged harassment by co-workers. In order for an employer to be liable for harassment by co-workers, a plaintiff must establish that the employer was "negligent either in discovering or remedying the harassment." *Vance*, 646 F.3d at 471 (stating that "[o]nce aware of workplace harassment, the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring"). Ford now accuses the following co-workers of harassment during her years of working for Ford: Ricky Miracle (Miracle) (2002), Brian Ripple (Ripple) (2003), Michael Scalzetti (Scalzetti) (2003), Jay Soucci (Soucci) (2003), Jim Guth (Guth) (2008-09), Rodney Zea (Zea) (2009), Andy Vargavich (Vargavich) (2011), Al Wills (Wills) (2011), Eugene White (White) (2011), Perry Haynes (Haynes) (2011), Mark Bowman (Bowman) (2012), Tyrone Lloyd (Lloyd) (2012), Jerry Summit (Summit) (2013), Don Cooper (Cooper)( 2012-13), and Jesse Landingham (Landingham) (2013). Hoekstra also accuses an unidentified security guard of harassment in 2004, unknown and unidentified individuals of harassment in the "mid-2000's," and other unknown individuals during other time periods. (R SF Par. 28, 81). Hoekstra testified at her deposition that she recalls "occasional comments from unknown, random employees in the hallway" that she considered harassment. (H. Dep. 27).

1.  Unreported Conduct

In regard to Miracle, Ripple, Soucci, Scalzetti, and Zea, it is undisputed that Hoekstra failed to report the alleged harassment to Ford. (R SF Par. 23, 24, 36). Ford cannot be considered negligent in discovering any such alleged harassment, when it is first informed of such harassment in a lawsuit filed over a decade after the alleged conduct occurred. Hoekstra also contends that she never reported the alleged harassment because she feared retaliation. However, if such an explanation were sufficient, there would never be any reporting obligation on an employee. The court also notes that Hoekstra's explanation is not consistent with the undisputed facts that show that Hoekstra frequently complained to management about workplace issues.

In regard to Guth, Hoekstra indicated at her deposition that she did not report his alleged harassment to Ford. (H. Dep. 189). Ford has also shown that Hoekstra in her response to interrogatories indicated during discovery that she never reported Guth's alleged conduct to Ford. (Reply R SF Par. 35). In regard to Vargavich, it is undisputed that after the alleged harassment, Hoekstra never reported it to Labor Relations. (R SF Par. 38). The record merely reflects that Hoekstra later mentioned the alleged conduct when being interviewed as a potential witness in another investigation. (R SF Par. 38).

In regard to the various unknown individuals accused of misconduct, Hoekstra also admits that she never reported to Ford the conduct of the unknown individuals. (R SF Par. 28, 81). Nor could Ford be negligent in remedying alleged harassment when Hoekstra was not even able to provide names of those she accused. As to the

unknown security guard, Hoekstra claims to have told her union representative at some point, but she has not shown that she informed Labor Relations or any management at Ford about the issue or that steps were not taken to address the complaint. (R SF Par. 25).

### 2. Wills

It is undisputed that after Hoekstra accused Wills of harassment, he was interviewed by Rebecca Taylor (Taylor) from Labor Relations. (R SF Par. 45). It is further undisputed that Wills was suspended pending the outcome of the investigation, that during the investigation at least eight witnesses were interviewed, and that none of the witnesses corroborated Hoekstra's claim that Wills touched her in the particular manner she claimed. (R SF Par. 45-48).

### 3. White

It is undisputed that after Hoekstra accused White of harassment, Labor Relations conducted an investigation, and no witness corroborated Hoekstra's version of events. (R SF Par. 54-55). It is further undisputed that even though there was no evidence to corroborate Hoekstra's accusations, White received a verbal coaching and counseling. (R SF Par. 55).

### 4. Haynes

Hoekstra accused Haynes of swerving an electric scooter near Hoekstra. (R SF Par. 56-57). Hoekstra indicated that she believes Haynes' action to be a part of the hostile work environment and may be part of a hidden conspiracy to retaliate against her. (H. Dep. 92-97). It is undisputed that there were no allegations that Haynes ever engaged in any alleged misconduct other than the swerving scooter. (R SF Par. 56-59). It is further undisputed that Hoekstra has no knowledge that Haynes had any connection with individuals whom she had accused of harassment. (R SF Par. 58). The undisputed facts further show that after Hoekstra complained about Haynes, he was counseled as to Ford's anti-harassment policy and instructed to drive more carefully. (R SF Par. 59); (Tay. Dep. 82-83).

### 5. Bowman

It is undisputed that when Hoekstra accused Bowman of harassment, she did not know his identity. (R SF Par. 69)). It is further undisputed that Labor Relations investigated the report and identified Bowman as the alleged harasser. (R SF Par. 70). It is also undisputed that during the investigation Bowman indicated that the alleged statements were not even directed at Hoekstra and that she incorrectly assumed he had been speaking to her. (R SF Par. 70). The undisputed facts show that Taylor in Labor Relations investigated the accusations and found that there was no evidence to verify Hoekstra's version of events. (R SF Par. 70). The undisputed facts further show that Bowman was coached and counseled. (R SF Par. 70).

9

### 6. Lloyd

Hoekstra accuses Lloyd of making a punching motion toward her on one occasion in 2012. Hoekstra does not explain the context of the alleged motion and was not sure if he was joking around or not. (H. Dep. 132-33). Hoekstra indicates that she believes the alleged conduct to be a part of her hostile work environment. The undisputed facts indicate that Hoekstra reported Lloyd to Labor Relations, and there is no showing that upon receiving the complaint Ford was negligent in addressing the situation.

### 7. Summit

Hoekstra accused Summit of doing a "side butt bump" and calling her "trouble" on one occasion in 2012 or 2013. (R SF Par. 75). It is undisputed that although at the time Hoekstra thought Summit meant it as a joke, Hoekstra later decided it was sexual harassment and reported Summit. (R SF Par. 75). It is undisputed that Hoekstra never reported Summit to Labor Relations and that the union representative whom she did inform spoke to Summit about the incident. (R SF Par. 76).

### 8. Cooper

It is undisputed that after Hoekstra accused Cooper of harassment, Labor Relations conducted an investigation, and no witness corroborated Hoekstra's version of events. (R SF Par. 77-78). It is further undisputed that even though there

was no evidence to corroborate Hoekstra's accusations, Cooper received a verbal coaching and counseling. (R SF Par. 78). Hoekstra admits that afterwards there was no other misconduct by Cooper other than one time when he allegedly stared at her from a distance away that she believed to be more harassing behavior. (R SF Par. 78).

### 9. Landingham

It is undisputed that after Hoekstra accused Landingham of harassment, Labor Relations conducted an investigation, and no witness corroborated Hoekstra's version of events. (R SF Par. 79). It is further undisputed that even though there was no evidence to corroborate Hoekstra's accusations, Landingham received a verbal coaching and counseling. (R SF Par. 79).

Thus, based on the above, in regard to alleged harassment by co-workers, the undisputed facts show that Ford was not negligent either in discovering or remedying the alleged harassment. Much of the alleged harassment was not brought to light by Hoekstra until many years later and on the various occasions when she did accuse others of misconduct, Ford took steps to investigate the accusations and correct any potential problem.

### B. Supervisors

Ford argues that there is not sufficient evidence to establish employer liability for any of the alleged harassment by supervisors. An employer is generally strictly

11

liable for harassment made by supervisors of a plaintiff. *Vance*, 646 F.3d at 469-70. However, under the *Ellerth/Faragher* affirmative defense an employer can avoid liability for the conduct of a supervisor if no tangible employment action was taken against the plaintiff by the supervisor and the employer can establish: (1) that "the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior," and (2) that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 951-52 (7th Cir. 2005). Ford now accuses the following supervisors of harassment during her years of working for Ford: Wayne Rosentrater (Rosentrater) (late 1990's), Carl Horton (Horton) (2001-03), Ray Vega (Vega) (2003, 2008, 2012), Bernie Burr (Burr) (2007-09), Eric Suyak (Suyak) (2010), and Jeff Gossage (Gossage) (2013). Hoekstra has not pointed to sufficient evidence to show that any of such supervisors took a tangible employment action against Hoekstra. The undisputed facts show that Ford has promulgated an anti-harassment policy and taken reasonable steps to prevent unlawful harassment in the workplace.

In regard to the allegations made against Rosentrater and Horton, the alleged misconduct supposedly occurred in 2003 and earlier. Such conduct, which occurred prior to a gap of several years in alleged harassment, is outside the limitations period for Title VII claims and cannot be introduced under the continuing violation theory. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683-87 (7th Cir. 2010). In regard to Vega, the undisputed facts show that Hoekstra did not inform Ford of the alleged conduct

by Vega in 2002 and 2008 until years later in 2012. (R SF Par. 30-31). Nor has Hoekstra pointed to sufficient evidence to show that Vega's alleged conduct in 2012 was sufficient to be actionable conduct. In regard to the accusations against Burr, Suyak, it is undisputed that Hoekstra never informed Ford of their alleged misconduct. (R SF Par. 32, 37). In regard to the accusations against Gossage, who allegedly called Hoekstra "babe" and "kiddo," it is undisputed that Hoekstra never reported the alleged conduct to Ford. (R SF Par. 80). Thus, the undisputed evidence shows that Hoekstra failed to take advantage of any preventive or corrective opportunities at Ford in regard to alleged conduct by supervisors. It is also apparent, based on the many complaints made by Hoekstra to Labor Relations, that she was familiar with how to pursue a sexual harassment complaint. Therefore, Ford's motion for summary judgment on the hostile work environment claim is granted.

III. Retaliation Claim

Ford moves for summary judgment on the Title VII retaliation claim. A plaintiff bringing a Title VII retaliation claim seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Moultrie v. Penn Aluminum Intern., LLC*, 766 F.3d 747, 754-55 (7th Cir. 2014). A plaintiff who is bringing a Title VII retaliation claims can defeat a defendant's motion for summary judgment under the direct method of proof by pointing to direct evidence of discrimination or to a "convincing mosaic of circumstantial evidence. . . ." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 641-42 (7th Cir. 2013)(quoting

*Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Under the indirect method of proof, a plaintiff who is bringing a Title VII retaliation claim must first establish a *prima facie* case. *Hobgood*, 731 F.3d at 641-42. A plaintiff can establish a *prima facie* case by showing: (1) that the "plaintiff engaged in activity protected by law," (2) that "he met his employer's legitimate expectations, *i.e.*, he was performing his job satisfactorily," (3) that "he suffered a materially adverse action," and (4) that "he was treated less favorably than a similarly situated employee who did not engage in the activity protected by law." *Id.*; *see also Whittaker v. Northern Illinois University*, 424 F.3d 640, 648 (7th Cir. 2005)(explaining that the definition of an adverse action is broader in the retaliation context than in the discrimination context). If the plaintiff establishes a *prima facie* case, the burden shifts back to the employer to present a legitimate, non-discriminatory reason for the adverse employment action. *Hobgood*, 731 F.3d at 641-42. If the employer provides such a reason, the burden then shifts back to the plaintiff to show that the employer's reason is pretext. *Id.*

In the instant action, Hoekstra has not pointed to sufficient evidence to proceed under the direct method of proof. For example, Hoekstra accuses Haynes of swerving a scooter near Hoesktra as part of a hidden conspiracy of retaliation. (R SF Par. 56-58). However, Hoekstra has pointed to no evidence tying Haynes to others associated with alleged harassment or retaliation. Hoekstra's personal belief and speculation in the absence of evidence are not sufficient to show any causal connection under the direct method of proof. *See Greengrass v. Int'l Monetary Sys.*

*Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015)(explaining a three-prong approach to the direct method of proof). Nor has Hoekstra pointed to sufficient evidence, even when considering it in its totality, to create a convincing mosaic of circumstantial evidence. In regard to the indirect method of proof, Hoekstra has not pointed to similarly-situated employees outside the protected class who were treated more favorably. (SJ Opp. 15-17). In addition, Ford has provided legitimate non-discriminatory reasons for any actions taken that Hoekstra contends adversely affected her. For example, Hoekstra claims that Ford cleaned out her locker during one of her medical leaves as retaliation for her complaining about alleged harassment. (R SF Par. 72). Ford, in response, has explained its security policy for emptying lockers that appeared to be vacant. (R SF Par. 72-74). The burden thus shifted to Hoekstra to show that the given reasons were a pretext for unlawful retaliation. Hoekstra, however, fails in her opposition to the instant motion to even address the pretext requirement. (SJ Opp. 15-18). Hoekstra provides only an incomplete recitation of the indirect method of proof and has failed to point to sufficient evidence to support her retaliation claim. (SJ Opp. 15). Therefore, Ford's motion for summary judgment on the Title VII retaliation claim is granted.

IV. Remaining State Law Claim

Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir.

1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts"). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, "in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. The instant action is still in the pre-trial stage and there is not sufficient justification to proceed solely on the remaining state law claim. The remaining state law claim is therefore dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, Ford's motion for summary judgment is granted in part, and denied in part, and the remaining state law claim is dismissed without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 27, 2015